IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2225-FL

DWIGHT EUGENE SLOAN,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)　　　　　　　ORDER
　　　　　　　　　　　　　　　　　　　)
WARDEN KEVIN BARNES,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Respondent.　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

The matter comes before the court on respondent's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 8). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondent's motion.

## STATEMENT OF CASE

On April 19, 2005, petitioner and his co-defendant Kolanda Kay Wooten ("Wooten") were convicted in the Wayne County Superior Court of first-degree murder and sentenced to a term of life imprisonment. See State v. Sloan, 180 N.C. App. 527, 529 (2006). Petitioner and Wooten subsequently filed a joint notice of appeal to the North Carolina Court of Appeals. Id. On December 19, 2006, the court of appeals issued an opinion in which the majority found no error. Id. p. 536. Judge Richard A. Elmore concurred with the majority opinion that there was no error in petitioner's conviction, but dissented from that portion of the majority opinion holding that the State

produced sufficient evidence to survive Wooten's motion to dismiss.[1] Id. pp. 535-536.  On March

8, 2007, the North Carolina Supreme Court dismissed petitioner's notice of appeal and petition for

discretionary review.  State v. Sloan, 361 N.C. 367, 644 S.E.2d 560 (2007).

On March 4, 2008, petitioner, acting through counsel Nora Henry Hargrove ("attorney

Hargrove"), filed a motion for appropriate relief ("MAR") in the Wayne County Superior Court.

(Pet. Ex. G).  Then next day, petitioner filed an amended MAR, and then again supplemented his

MAR on April 4, 2008.  (Id. Ex. H ¶ 3).  The superior court dismissed the MAR without prejudice

on September 4, 2008.  (Id. Ex. H ¶ 5).  Attorney Hargrove attests that she did not receive notice of

the Wayne County Superior Court's September 4, 2008, order dismissing petitioner's MAR.  (Id.

¶ 4).

On July 24, 2014, petitioner filed a second MAR, through counsel Patrick Michael Megaro

("attorney Megaro"), in the Wayne County Superior Court.  (Pet. Ex. J).  In his second MAR,

petitioner alleged that his trial counsel failed to investigate a defense or to interview and present

defense witnesses who would have exonerated petitioner.  (Id.)  Petitioner also alleged that his trial

counsel coached petitioner to testify to facts unsupported by the evidence to establish an imperfect

self-defense claim.  (Id.)  On September 10, 2015, the superior court conducted an evidentiary

hearing and heard testimony from the following three witnesses for petitioner:  Robert Wooten;

Yolanda Sloan; and Mary Sloan.  (Id. Ex. M).  On February 9, 2016, the superior court denied

---

[1]  Because Wooten obtained a dissent from the court of appeals, she had an appeal as of
right to the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-30(2).  The supreme
court affirmed Wooten's conviction on October 12, 2007.  See State v. Sloan, 361 N.C. 584
(2007).

petitioner's MAR. (Id.). On June 7, 2016, petitioner filed a petition for a writ of certiorari in the court of appeals, which was denied on June 22, 2016. (Id. Ex. O).

On September 15, 2016, petitioner, acting through attorney Megaro, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner contends that he received ineffective assistance of trial counsel because his counsel failed to investigate a potential defense, to interview exculpatory witnesses, and to present witnesses at trial who were ready, willing, and able to offer exculpatory evidence. Respondent subsequently filed a motion for summary judgment pursuant to Rule 56(a) arguing that petitioner's habeas petition should be dismissed because it was filed outside of the statute of limitations, and therefore is time-barred. Alternatively, respondent argues that the petition should be dismissed on the merits. The petition was fully briefed.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> Defendant Wooten and a witness, Sherquanda Fields (Fields), both had a relationship with the victim, Jamal Pearsall (Pearsall). On 23 August 2003, Pearsall saw the two together while they were looking for defendant Wooten's brother in a car driven by defendant Wooten's aunt. Pearsall became upset and ordered Fields to get out of the car. An argument ensued and defendant Wooten broke the window out of Pearsall's car with her hand. She then rode off, with Fields still in the car.
>
> Later that night, defendant Wooten, Pearsall, and others met to discuss payment for the car window. Defendant Wooten's boyfriend, "Don Don," arrived, and attacked Pearsall. Following the confrontation, Pearsall departed with Fields, and the two spent the night at Fields's house. Pearsall set out the next morning for his mother's house.
>
> Witness Nora Robinson (Robinson) testified that on 24 August 2003 she saw a man with a gun behind a tree. She went inside, and then heard gunshots. She looked outside, where she saw defendant Sloan walking away from Pearsall's car, trying to cock a jammed gun and

muttering. Specifically, defendant Sloan said, "I'm going to kill this mother f———." Robinson watched as defendant Sloan got into a white car. She then heard Leanne Sutton (Sutton) yell from the car, "You should have shot the mother f——— in the head." Defendant Sloan denied that he had hidden behind the tree or fired the gun. He claimed that a housemate of his, Antonio Woods (Woods), shot the gun. He also testified that he never said, "I'm going to kill this mother f———," and that no one ever said he should have shot Pearsall in the head. After defendant Sloan got into the white car, defendant Wooten, who was driving, followed Pearsall's car as it drove away.

The evidence showed that there was a high-speed chase, during which the car Wooten was driving ran a stop sign, and Pearsall's car hit a parked car. Further testimony indicated that the white car driven by Wooten pulled even with Pearsall's car, and an unidentified black arm stuck out of the white car's window and shot into Pearsall's car.

Following the incident, defendant Sloan came forward voluntarily, accompanied by his mother and father, to discuss the matter with the authorities. SBI Agent Barbara Lewis (Agent Lewis) interviewed him, and testified from her notes. She stated that defendant Sloan said he had argued with Pearsall over some speakers that he believed Pearsall to have stolen. He told Agent Lewis that he had shot at Pearsall as he drove past Pearsall in a car driven by defendant Wooten. Agent Lewis further testified that defendant Sloan informed her that he did not intend to kill Pearsall, and that no one else in the car was aware that he had a gun prior to the shooting.

Defendant Wooten also talked to Agent Lewis. Agent Lewis stated that defendant Wooten told her that when defendant Sloan pulled out the gun and fired twice, she screamed at him, "Why did you do that, why did you do that?" Defendant Wooten told Agent Lewis that defendant Sloan responded, "[J]ust drive, don't worry about it, just drive."

Sloan, 180 N.C. App. at 529-530.

Additionally, the facts as stated by the Wayne County Superior Court following the September 10, 2015, evidentiary hearing on petitioner's second MAR are as follows:

> 7. The Court finds that sworn testimony was given by Robert Wooten, Yolanda Sloan and Mary Sloan.

8. The Court finds that all of the above witnesses, who gave sworn testimony, are blood-relation to defendant.

9. The Court finds that defendant, although present throughout the entirety of the hearing, did not testify.

10. The Court finds that Robert Wooten testified that he would have testified in the original murder trial that defendant never fired a gun at the victim.

11. The Court finds that Robert Wooten's written statement to police (State's 1), dated 24 August 2003, states, "I saw Dwight pull out a gun but I don't know where he got it from. He shot at Jamaal once from out the window."

12. The Court finds that witness Robert Wooten's testimony conflicts with his written statement given to police on 24 August 2003, (State's 1).

13. The Court finds that witness Robert Wooten was also blood-relation to defendant's codefendant, Kolanda Wooten.

14. The Court finds that Kolanda Wooten was represented by attorney Mike Reece at the time of the original joined murder trial.

15. The Court finds that Robert Wooten spoke to both defendant's attorney Geoff Hulse and codefendant's attorney Mike Reece about his proposed testimony.

16. The Court finds that at the time of the original trial, Robert Wooten was 14 years of age, and attending a special needs school.

17. The Court finds, through a review of the admitted trial transcript, (State's 2), that attorney Mike Reece also chose not to call Robert Wooten as a witness in the original joined trial.

18. The Court finds that the testimony of Yolanda Sloan and Mary Sloan primarily dealt with providing an

alternative suspect, Antonio "TT" Woods, to defendant's trial attorney; and the fact that defendant's trial attorney did not proffer this alternative suspect/alternative theory to the jury.

19. The Court finds that no competent evidence was adduced that defendant's trial attorney failed to investigate information purportedly provided by Yolanda Sloan and Mary Sloan, or interview potential witnesses.

20. The Court finds that defendant's trial attorney did present evidence that tended to inculpate Antonio "TT" Woods, and exculpate, or at a minimum mitigate, defendant's participation.

21. The Court further finds that defendant's trial attorney did proffer evidence to the jury that the gun used in the incident was originally obtained from Antonio "TT" Woods:

> Q.    This gun where did you get this gun?
> A.    I got it through Antonio Woods.
> Q.    What, was Antonio Woods' nickname?
> A.    TT.
> Q.    Was he in your vehicle that day on August 24?
> A.    Yes, sir.

[TT, Vol. VI, P.7-*Dwight Sloan as examined by Mr. Hulse*]

22. The Court further finds that defendant's trial attorney did proffer evidence to the jury that Antonio "TT" Woods was the shooter from the Maple Street location:

> Q.    Then what happened?
> A.    Robert said, Whoa. And Jamaal put his car in drive and he started to pull off, and TT pulled the gun out and shot.

[TT, Vol. VI, P. 29-*Dwight Sloan as examined by Mr. Hulse*]

23. The Court further finds that defendant's trial attorney did proffer evidence to the jury that Antonio "TT" Woods attempted to shoot the victim a second time:

> Q. What did Mr. Pearsall do after that happened?
> A. Mr. Pearsall drove off a little ways and he stopped.
> Q. All Right. After the shot?
> A. Yes, sir.
> Q. What happened if anything then?
> A. Well, TT was trying to fire the gun again but it jammed. Mr. Pearsall at that time had put his car in reverse and was backing up slowly. TT told me to take this raggedy-ass gun. It jammed.

[TT, Vol. VI, P. 31-*Dwight Sloan as examined by Mr. Hulse*]

24. The Court further finds that defendant's trial attorney did proffer evidence to the jury that tended to exonerate defendant and inculpate another alternative suspect/alternative theory:

> Q. Did you-did you ever . . . did you ever shoot the gun on Maple Street?
> A. No, sir, I did not.
> Q. Did-when you were playing with the gun, as you said, did you ever say, I'm going to kill this mother-fucker?
> A. No sir, I did not.
> Q. Did you ever hide behind a tree during that period of time?
> A. No, sir.
> Q. Where were you the whole time once you got there?
> A. I was on the sidewalk.
> Q. Did you ever go into the yard?
> A. No, sir.
> Q. So is it your testimony you were either in the car or on the sidewalk?
> A. Yes, sir.
> Q. Did you see other people out there?
> A. I think so, yes sir.

(Pet. Ex. M).  Based upon the foregoing findings of fact, the superior court made the following pertinent conclusions of law:

4.      The Court concludes, by a preponderance of the evidence, that defendant, by not testifying, has abandoned his second claim of ineffective assistance of counsel, to wit:  Trial counsel coached defendant to testify to facts unsupported by the evidence to establish an imperfect self-defense claim.

5.      The Court concludes, by a preponderance of the evidence, that trial counsel's decision not to call Robert Wooten to testify in the original trial was objectively reasonable given that Wooten's testimony would have conflicted with his written statement given to the police, as well as Wooten's age, maturity and special education status.

6.      The Court further concludes, by a preponderance of the evidence, that trial counsel's decision not to call Robert Wooten to testify in the original trial was objectively reasonable, given that codefendant's attorney, Mike Reece, also chose not to call Wooten to testify for his client in the joined trial.

7.      The Court concludes, by a preponderance of the evidence, that the testimony of Yolanda Sloan and Mary Sloan contain insufficient basis to establish ineffective assistance of counsel.

8.      The Court concludes, by a preponderance of the evidence, that the testimony of Robert Wooten, Yolanda Sloan and Mary Sloan create no material conflict in evidence for the court to resolve. . . .

12.     The Court concludes, by a preponderance of the evidence, that defendant's trial attorney did present evidence of an alternative suspect/alternative theory of events such that there is no reasonable probability that defendant was deprived of a fair trial, a trial whose results are reliable.

13.  The Court concludes, by a preponderance of the evidence, that the weight of evidence in the original trial against defendant was great, including:

- defendant's own admission to firing the gun at the victim as he drove past the victim in a car driven by his codefendant;

- Nora Robinson's testimony that after hearing gunshots, she saw defendant walking away from the victim's car, trying to cock a jammed gun, and saying, "I'm going to kill this mother f-----."

- defendant's statement to police that he did not intend to kill the victim, and that no one else in the car was aware that he had a gun prior to the shooting; and

- codefendant's statement to police that she screamed at defendant, "why did you do that, why did you do that?" after defendant pulled out the gun and fired it twice at the victim.

(Id.)

## DISCUSSION

A.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see, e.g., Kernan v. Hinojosa, 136 S. Ct. 1603, 1604 (2016) (per curiam); Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam). A state-court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014).

Section 2254(d) "does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Section 2254(d) also does not require a federal court to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings." Id. Moreover, a state court's factual determination is presumed

correct, unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the standard in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to be difficult to meet. See White, 134 S. Ct. at 1702; Harrington v. Richter, 562 U.S. 86, 102 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 103. To prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 98.

> 2.   Analysis

>> a.   Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; B) the date on which the impediment to filing an application . . . is removed . . .; C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The running of the period of limitation under § 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557,

561 (4th Cir. 1999). An application for post-conviction or other collateral review is pending from

initial filing until final disposition by the state court. See Taylor, 186 F.3d at 561.

In this case, the statutory period began to run on the date petitioner's judgment became final.

The North Carolina Court of Appeals entered an order finding no error on December 19, 2006, and

the supreme court denied petitioner's motion for discretionary review on March 8, 2007. Petitioner

then had an additional 90 days to file a petition for a writ of certiorari in the United States Supreme

Court. See Supreme Court Rule 13; Gonzalez v. Thaler, 565 U.S. 134, 150 (2012). Petitioner did

not file a petition for a writ of certiorari in the Supreme Court. Accordingly, petitioner's conviction

became final on June 6, 2007. The statute of limitations then began to run, and ran for 272 days

until petitioner filed his first MAR on March 4, 2008.

Generally, the time period between the denial of a post-conviction MAR and the filing of a

corresponding petition for a writ of certiorari in the North Carolina Court of Appeals is tolled.

See Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000). Petitioner did not file a petition for

a writ of certiorari in the court of appeals following the denial of his first MAR on September 4,

2008. Accordingly, the statutory period resumed when the superior court denied petitioner's first

MAR on September 4, 2008, and expired 93 days later on Monday December 8, 2008. See Fed. R.

Civ. P. 6(a)(1)(B). Petitioner's second MAR, filed on July 24, 2014, did not operate to toll the

statute of limitations period because it was filed after the expiration of the statue of limitations, and

petitioner has not established grounds for statutory tolling. See Minter v. Beck, 230 F.3d 663,

665–66 (4th Cir. 2000); Streater v. Beck, No. 3:05CV284–MU–02, 2006 WL 1877149, *2

(W.D.N.C. Jul.6, 2006) ("[I]t is well settled that a . . . motion or petition [filed subsequent to the

close of the statutory period] for collateral review in State court cannot somehow breathe new life into an already expired federal limitations period[.]"), appeal dismissed, 207 F. App'x 271, 2006 WL 3407741 (4th Cir. 2006). Thus, the statute of limitations expired on December 8, 2008, and petitioner filed the instant petition after the expiration of the statute of limitations.

As a defense to the running of the statue of limitations, petitioner asserts that he is entitled to equitable tolling due to the alleged ineffective assistance of his MAR counsel– attorney Hargrove. Even though the purpose of the AEDPA is to "reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism," the Fourth Circuit has held that "the AEDPA statute of limitations is subject to equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Nonetheless, the Fourth Circuit has noted the rarity in which equitable tolling applies. "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. . . . Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. at 246 (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Rather, equitable tolling only is "appropriate when . . . extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit." Id. (citation and quotations omitted).

Generally, attorney negligence, as asserted here, does not warrant equitable tolling. See Holland v. Florida, 560 U.S. 631, 651-52 (2010) ("We have previously held that "a garden variety claim of excusable neglect, . . . such as a simple miscalculation that leads a lawyer to miss a filing deadline, . . . does not warrant equitable tolling.") (internal quotations omitted). However, equitable tolling based upon attorney negligence may be available in cases that are more egregious

than a "garden variety claim of excusable neglect." United States v. Oriakhi, 394 F. App'x 976, 977 (4th Cir. 2010) (citing Holland, 560 U.S. at 648-653). For instance, tolling is appropriate only where the attorney's conduct rose to the level of an "extraordinary circumstance" that prevented the petitioner from timely filing the pleading at issue. Holland, 560 U.S. at 653. Extraordinary circumstances may be demonstrated by a showing of an extraordinary "failure by the attorney to provide reasonably competent legal work, to communicate with his client, to implement his client's reasonable requests, to keep his client informed of key developments in their case, or to never abandon a client." Oriakhi, 394 F. App'x at 977; Maples v. Thomas, 565 U.S. 266, 281-289 and n. 7 (2012) (finding that attorney's abandonment of petitioner constituted cause to overcome procedural default and remarking that distinction between attorney negligence and attorney abandonment should apply equally in equitable tolling context). A petitioner seeking such tolling also must demonstrate that he, himself, exercised "reasonable diligence" in pursuing his legal remedies. Holland, 560 U.S. at 653.

Assuming without deciding that petitioner is able to establish that attorney Hargrove acted with sufficient negligence to warrant equitable tolling, the court now determines whether petitioner acted with diligence in discovering the superior court's September 4, 2008, order. The record reflects that petitioner discovered the superior court's September 4, 2008, order on March 27, 2014. (Pet. ¶ 41). Petitioner states that he and his family diligently contacted attorney Hargrove regarding the status of petitioner's MAR, but that attorney Hargrove never "followed up with the [MAR] court for a period of six years until petitioner was finally forced to hire [his current counsel] to inquire into the delay." (Pet. Resp. p. 6). Petitioner, however, does not provide any evidence, such as copies of letter or emails, to establish that he diligently communicated with attorney Hargrove while the

14

first MAR was pending. Petitioner further has not explained his six-year delay in contacting the superior court regarding the status of his first MAR or the nearly four-month delay from the date that he discovered the dismissal of his first MAR on March 27, 2014, until the date he filed his second MAR on July 24, 2014. (See Pet. ¶ 41). Based upon the foregoing, petitioner has not demonstrated that "extraordinary circumstances" beyond his control prevented him from complying with the statutory time limit, and is not entitled to equitable tolling on this ground. Eliaba v. Clarke, No. 3:15CV376, 2016 WL 4706930, at *6 (E.D. Va. Sept. 7, 2016) ("Simply put, [petitioner] fails to demonstrate some external impediment, rather than his own lack of diligence, prevented him from filing a habeas petition in a timely fashion.") (citation omitted), dismissing appeal, No. 16-7392, 2017 WL 698359 (4th Cir. 2017).

In addition to his equitable tolling claims, petitioner alleges that he is actually innocent of first-degree murder. Recently, the Supreme Court recognized in McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013), an actual innocence exception to AEDPA's time limitations. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin, 133 S. Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Further, "claims of actual innocence are rarely successful," Schlup, 513 U.S. at 324, and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998).

As set forth in more detail below, petitioner has not set forth any factual allegations to suggest a plausible claim for relief. Petitioner's conclusory allegations are insufficient to establish his actual innocence. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle habeas petitioner to an evidentiary hearing."), overruled on other grounds by, Gray v. Netherland, 518 U.S. 152, 165-66 (1996). Thus, petitioner's actual innocence claim does not excuse the untimely filing of this § 2254 petition.

    b.  Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution because his counsel failed to investigate a potential defense of an alternative shooter, failed to interview exculpatory witnesses, and failed to present witnesses at trial who were ready, willing, and able to offer exculpatory evidence related to an alternative shooter.[2] The witnesses at issue include: Antonio "TT" Wood's ("TT Woods"); Tiara Bynum; Leigh Ann Sutton; and Robert Wooten. Petitioner raised his ineffective assistance of counsel claim in his second MAR. The superior court conducted an evidentiary hearing on petitioner's ineffective assistance of counsel claims, and then denied petitioner's MAR.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, a petitioner must

---

[2] In his second MAR, petitioner also alleged he received ineffective assistance of counsel because his trial counsel coached petitioner to testify to facts unsupported by the evidence to establish an imperfect self-defense claim. Petitioner did not raise this claim in the instant petition. Even if petitioner had raised the claim, he would not be entitled to habeas relief because he has not provided any factual or evidentiary support for this claim. See Nickerson, 971 F.2d at 1136.

show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Id.; Harrington, 562 U.S. at 88; see Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Moreover, the AEDPA adds a double layer of deference to ineffective-assistance-of-counsel claims. See, e.g., Burt v. Titlow, 134 S. Ct. 10, 13 (2013); Cullen v. Pinholster, 563 U.S. 170, 190 (2011). The court first determines whether counsel's performance was deficient with respect to witnesses TT Woods, Tiara Bynum, Leigh Ann Sutton, or Robert Wooten.

### 1. TT Woods and Tiara Bynum

Petitioner contends that trial counsel failed to investigate evidence indicating that TT Woods fired shots on the date of the murder. In particular, petitioner asserts that his trial counsel failed to present a cassette tape recording of a conversation between TT Woods and Yolanda and Mary Sloan (petitioner's mother and sister), in which TT Woods admitted that he brought the gun to the confrontation and fired the first shot on Maple Street. (Pet. Ex. D, ¶ 9; MAR TR. pp. 82-83).

Petitioner also states that his trial counsel failed to investigate a written statement from Tiara Bynum which also stated that TT Woods fired a shot at the victim. (Pet. Ex. D).

Counsel produced evidence at trial that the gun used in the incident originally was obtained from TT Woods, and that TT Woods was the shooter from the Maple Street location. (Pet. Ex. M, pp. ¶¶ 20-24). In fact, petitioner's charge for discharging a weapon into an occupied property located on Maple Street was voluntarily dismissed by the State at the close of evidence at trial. (Pet. Ex. B, p. 146). Finally, there is no evidence to suggest that TT Woods or Tiara Bynum were willing or available to testify at trial. See Nickerson, 971 F.2d at 1136. Thus, petitioner has not established that his counsel acted unreasonably.

## 2. Leigh Ann Sutton

Petitioner contends that his trial counsel was ineffective for failing to investigate Leigh Ann Sutton, who was a passenger in the vehicle in which petitioner was traveling on the night of the incident at issue. Petitioner asserts that the Wayne County District Attorney threatened Leigh Ann Sutton to stay away from petitioner's trial or face criminal charges.

"Although a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998). Here, petitioner has not presented any evidence that Leigh Ann Sutton would have provided testimony favorable to petitioner. Rather, petitioner's allegations rest on mere speculation, and are insufficient to establish that trial counsel acted unreasonably. See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have

testified to in exculpation"); <u>Bassette v. Thompson</u>, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing ineffective assistance of counsel claims where petitioner failed to make an adequate proffer of testimony of witness). Thus, petitioner has not established that his counsel acted unreasonably.

3.    Robert Wooten

Petitioner asserts that his trial counsel acted unreasonably by not calling Robert Wooten as a witness at trial. Petitioner contends that Robert Wooten would have testified that petitioner never fired the gun at the victim. (Pet. Ex. M ¶ 10). Petitioner additionally contends that Robert Wooten would have substantiated petitioner's self-defense claim by testifying that the victim had a gun and that he saw TT Woods shoot the victim on Maple Street. (<u>Id.</u> Ex. K, pp. 10-11).

The MAR court considered this claim and concluded that trial counsel did not act unreasonably because Robert Wooten's potential testimony about seeing TT Woods shoot the victim would have been dramatically contradicted by Robert Wooten's prior written statement to police that he saw petitioner shoot the victim. (Pet. Ex. M, ¶ 12). This fact in connection with Robert Wooten's young age (14 at the time of trial), his maturity, and special education status reflect the reasonableness of trial counsel in deciding not to call Robert Wooten as a witness. (<u>Id.</u>); <u>see</u> <u>Terry</u>, 366 F.3d at 318 ("A fundamental reality of trial practice is that [o]ften, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses.") (internal quotation omitted). Further, the strategic decision of whether to call a witness is one that should not be second guessed on habeas review. <u>See</u> <u>Harrington</u>, 562 U.S. at 106 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."); <u>Bunch v. Thompson</u>, 949 F.2d 1354, 1363–64 (4th Cir. 1991). Crediting

counsel's strategic decisions in this action, petitioner has not demonstrated that trial counsel's decisions were unreasonable under the circumstances.

The court next turns to the prejudice prong of the <u>Strickland</u> test. Petitioner has not presented evidence sufficient to demonstrate a reasonable probability that the result of the proceedings would have been different if counsel had presented additional evidence from any of the above-stated sources, particularly in light of the other evidence presented at trial. <u>See</u> <u>Harrington</u>, 562 U.S. at 111-112. In particular, North Carolina State Bureau of Investigation Agent Barbara Lewis testified at trial that petitioner admitted to shooting the victim as petitioner drove past the victim in a car driven by petitioner's co-defendant. <u>Sloan</u>, 638 S.E.2d at 39. Agent Lewis further testified at trial that petitioner's co-defendant told Lewis that petitioner fired a gun twice. <u>Id.</u> State's witness Nora Robinson testified that she heard petitioner say, "I'm going to kill this mother f-----" while petitioner was trying to cock a jammed gun as he was walking away from the victim's car. <u>Sloan</u>, 638 S.E.2d at 38. As a result, petitioner has not satisfied the prejudice prong of the <u>Strickland</u> test.

Based upon the foregoing, petitioner has not demonstrated that the MAR court's denial of petitioner's ineffective assistance of counsel claim constituted an unreasonable determination of the facts or a decision contrary to or involving an unreasonable application of Supreme Court precedent. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. <u>See</u> 28 U.S.C. § 2254(d)-(e). Therefore, respondent's motion for summary judgment is GRANTED.

B.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " Buck v. Davis, No. 15-8049, 2017 WL 685534, at *11 (Feb. 22, 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003)); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds

first to resolve the issue whose answer is more apparent from the record and arguments." <u>Slack</u>, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS respondent's motion for summary judgment (DE 8). The certificate of appealability is DENIED, and the clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of June, 2017.


LOUISE W. FLANAGAN
United States District Judge